United States Court of Appeals
FOR THE EIGHTH CIRCUIT

U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED
FEB 27 2006
CHRIS R. JOHNSON, CLERK
BY
DEPUTY CLERK

No. 05-1558

6 4-2015

| | |
|---|---|
| George Roger Lee, | * |
| | * |
| Appellant, | * |
| | * |
| v. | *   Appeal from the United States |
| | *   District Court for the Western |
| | *   District of Arkansas. |
| Rheem Manufacturing Company, | * |
| | * |
| Appellee. | * |

Submitted: October 12, 2005
Filed: December 28, 2005

Before LOKEN, Chief Judge, BENTON and GRUENDER, Circuit Judges.

GRUENDER, Circuit Judge.

George Roger Lee appeals the decision of the district court[1] granting summary judgment to Rheem Manufacturing Company ("Rheem") on Lee's claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. For the reasons stated below, we affirm.

---

[1]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

## I. BACKGROUND

Rheem operates a manufacturing plant in Fort Smith, Arkansas. The plant is part of Rheem's Air Conditioning Division, and the administrative offices of that division are attached to the plant. Lee began working for Rheem at this facility in 1969 as Assistant Personnel Director in the human resources department and was promoted to Human Resources Manager in 1973. As Human Resources Manager, Lee's responsibilities included supervising plant personnel, formulating and implementing personnel policies and procedures, acting as Rheem's chief spokesman during contract negotiations with Local 7893 of the United Steelworkers of America ("Local 7893"), representing Rheem in labor arbitrations, and approving all salaried promotions, demotions, and merit increases.

In 1995 or early 1996, Lee was diagnosed with chronic fatigue syndrome. After Lee's physician determined that he could no longer perform the duties of Human Resources Manager, Lee voluntarily retired from Rheem on May 31, 1996. Lee elected to receive his Rheem-sponsored pension and profit-sharing accounts in a lump sum and subsequently lost a substantial amount of that money in the stock market. Upon Lee's retirement, Tony Johnson began performing the duties of Human Resources Manager and was officially given the title in 1999. Johnson had been hired by Lee in 1977 and for 19 years worked as Lee's subordinate in three positions at Rheem, including Labor Relations Administrator.

After Lee retired from Rheem, the relationship between Rheem and Local 7893 grew increasingly tense for several reasons. In 1998, for the first time since at least 1977, union members at the plant went on strike for one week during contract negotiations. The tension was also due in part to the election of Rheem employee James Steele as President of Local 7893 in 2001 because Steele had a confrontational attitude toward Rheem and the number of grievances filed by the union dramatically increased during his tenure. Furthermore, the union resisted changes that occurred

when Rheem began implementing the "lean manufacturing" business model at the Fort Smith plant in 2001. For example, the model required employees to perform a larger number of production tasks and to rotate between tasks within their departments.

In October 2002, a position in the human resources department entitled Labor Relations Administrator became vacant when an employee passed away unexpectedly. Rheem recruited for this position by means of an advertisement placed in three newspapers, which described the qualifications for the job as follows:

> The successful candidate will have a bachelor's degree in a business-related field with at least 5 years experience in labor relations. Proven experience in labor agreement interpretation, grievance handling, discipline, arbitration preparation, negotiations, and human resources generalist knowledge is required. Excellent interpersonal skills required.

The Labor Relations Administrator was responsible for investigating grievances filed by Local 7893, representing Rheem in meetings with Local 7893 regarding the grievances, investigating disciplinary incidents involving bargaining-unit employees, preparing for labor arbitrations, participating in negotiations for new collective bargaining agreements, and performing other human resource functions assigned by the Human Resources Manager and others. When Lee held the position of Human Resources Manager, he supervised the Labor Relations Administrators and performed many of the tasks that in 2002 were accomplished by the Labor Relations Administrators.

Twelve individuals expressed interest in the Labor Relations Administrator position–nine external applicants, including Lee and Donald W. Raines, and three internal applicants. Before mailing his resume and cover letter, Lee contacted Tony Johnson, William S. Ostan, the corporate Vice President of Human Resources in New York, and J.R. Jones, the President of the Air Conditioning Division, to ask if they had

any objections to Lee applying for the position. They each responded that they did not have a problem with Lee's applying for the position. A three-person search committee composed of Johnson, Gary Hale, the Air Conditioning Division Vice President of Human Resources, and Tom Wise, the Fort Smith Plant Manager, interviewed the applicants and unanimously recommended Raines to Ostan. Ostan independently interviewed Raines and approved the selection. At the time, Lee was 63 years old and Raines was 39.

Lee filed suit against Rheem under the ADEA based on Rheem failing to hire Lee for the Labor Relations Administrator position. The district court granted Rheem's motion for summary judgment, assuming that Lee presented direct evidence of age discrimination and holding that Rheem provided sufficient evidence that it would have made the same decision absent consideration of Lee's age. The district court also determined, assuming that Lee established a prima facie case of age discrimination, that Lee failed to introduce evidence creating a genuine issue of material fact as to whether Rheem's legitimate, nondiscriminatory reasons for not hiring him were pretextual. Lee appeals the grant of summary judgment, arguing that he presented direct evidence of discrimination, or in the alternative, that he came forward with sufficient evidence to create a genuine issue of material fact as to whether Rheem's asserted reasons for the employment decision were pretextual.

## II. DISCUSSION

We review the district court's grant of summary judgment to Rheem de novo. *Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 880 (8th Cir. 2005). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

The ADEA prohibits a covered employer from failing or refusing to hire an individual who is at least forty years old because of the individual's age. 29 U.S.C. §§ 623(a)(1), 631(a). An individual claiming age discrimination may survive the employer's motion for summary judgment in one of two ways. First, the individual can present direct evidence of discrimination, which is "evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Russell v. City of Kansas City, Missouri*, 414 F.3d 863, 866 (8th Cir. 2005) (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004)); *see, e.g., E.E.O.C. v. Liberal R-II School Dist.*, 314 F.3d 920, 924-25 (8th Cir. 2002) (holding that a bus driver's allegation that the superintendent told him the school board felt he "was too old to drive a bus" and the superintendent's comment to the unemployment board that plaintiff was "now 70 1/2 years of age" constituted direct evidence of age discrimination); *Kneibert v. Thomson Newspapers, Mich. Inc.*, 129 F.3d 444, 452 (8th Cir. 1997) (holding that the statement of a decisionmaker to a terminated editor that he "had no use for a senior editor" but rather needed "three young editors" for the news department was direct evidence). The second way to survive summary judgment is by "creating the requisite inference of unlawful discrimination" through the familiar three-part analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Griffith*, 387 F.3d at 736. Lee argues that he presented sufficient direct and circumstantial evidence to avoid summary judgment in favor of Rheem.

### A. Direct Evidence

Lee first argues that the district court erred in granting summary judgment because certain inquiries and comments made during his interview for the Labor Relations Administrator position constituted direct evidence of discrimination. We disagree and hold that none of these statements demonstrate a specific link between the alleged age-related discriminatory animus and Rheem's decision not to hire Lee.

According to Lee, Wise told him during the interview that "things have changed a lot," asked Lee if he thought he would be able to "grasp these new processes" in the plant, and stated that Rheem had to "plan for the future." Hale made the analogy of Lee returning to a basketball team during a new season with a new coach and finding himself on the bench. In addition, both Hale and Wise asked Lee how long he intended to work if hired.

Although Lee's expected years of work is related to his age, "factors other than age, but which may be correlative with age, do not implicate the prohibited stereotype, and are thus not prohibited considerations." *Schiltz v. Burlington Northern R.R.*, 115 F.3d 1407, 1412 (8th Cir. 1997) (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993)). We have held that the statement by a decisionmaker to an employee allegedly made while explaining the decision to demote him, "Twenty years is too long. You should have moved five years ago," did not constitute direct evidence of age discrimination. *Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 725 (8th Cir. 2001). This is because "[t]o amount to direct evidence of age discrimination, there would have to be evidence that [the employer] was using length of tenure as a proxy to accomplish age discrimination." *Id.* Also in *Erickson*, the decisionmaker's comments that the employee was "stale," "set in his ways" and "needed a new focus" did not constitute direct evidence. *Id.* at 724-25. Similarly, here the interviewers' comments to Lee regarding changes in the Fort Smith plant express "legitimate business concerns," *id.* at 725, and do not "clearly point[] to the presence of an illegal motive." *Griffith*, 387 F.3d at 736. No reasonable fact-finder could conclude that the questions and statements posed to Lee are direct evidence that age discrimination actually motivated Rheem's decision not to hire Lee.

## B. Circumstantial Evidence

Because Lee lacks direct evidence of age discrimination, we analyze his claim under the burden-shifting analysis of *McDonnell Douglas*. Like the district court, we assume that Lee has established a prima facie case of age discrimination and shift the burden to the employer to articulate a legitimate, nondiscriminatory reason for its hiring decision. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). If the employer proffers such a reason, it then becomes the individual's burden to show there is a genuine factual controversy regarding whether the legitimate, nondiscriminatory reason is a pretext for an intent to discriminate based on age. *Chambers v. Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 855 (8th Cir. 2003).

Rheem has articulated several legitimate, nondiscriminatory reasons for its employment decision. Rheem wanted to hire someone who would work for more than a few years and had the potential to succeed Johnson, who was 56 years old at the time, as the Human Resources Manager. The search committee believed that Lee's goal was not to begin a challenging career and to advance within the company, but to earn short-term money necessitated by his losses in the stock market. Lee told the interviewers and other Rheem personnel in writing and in person that he was not interested in replacing Johnson. Rheem also was concerned about Lee's health because he had retired from Rheem in 1996 due to chronic fatigue syndrome and the Labor Relations Administrator position had become a high stress position with a greater workload as a result of discord between the union and Rheem. Hale was disturbed by Lee's display of poor judgment when Lee called Local 7893 President Steele to ask if Steele would be able to work with him if Lee was hired as the Labor Relations Administrator. In addition, Rheem believed that overall Raines was more qualified than Lee because Raines was interested in a long-term relationship with Rheem and eventual promotion, was familiar with lean manufacturing principles, had significant labor relations experience, and was genuinely interested in the job and opportunities at Rheem.

Because Rheem articulated legitimate, nondiscriminatory reasons for its decision not to hire Lee, the burden shifts back to Lee to present sufficient evidence to raise a question of material fact as to whether one or more of Rheem's proffered reasons is a pretext for age discrimination. *Griffith*, 387 F.3d at 736-37. Keeping in mind that "courts do not review the wisdom or fairness of employers' business judgments, other than to determine whether they involve intentional unlawful discrimination," *Peterson v. Scott County*, 406 F.3d 515, 523 (8th Cir. 2005), we conclude that Lee has not met his burden and summary judgment was appropriately granted to Rheem.

Lee argues that Rheem's desire to hire a successor for Johnson was pretextual because he claims that Rheem did not engage in successorship planning at that level. However, the record supports Rheem because both Lee himself and Johnson had been promoted to Human Resources Manager after holding a subordinate position within the human resources department. Moreover, Lee specifically informed the search committee that he was not interested in replacing Johnson but would mentor and train whoever succeeded Johnson in the Human Resources Manager position. Rheem's concern that Lee was focused solely on the money and was not genuinely interested in the work or in promotions within the company also is supported by the record. Lee made the unusual offer to work as the Labor Relations Administrator for half-salary for a period of six months and thereafter for full salary only if Rheem was satisfied with his performance. In one of the interviews, Lee also described his financial troubles and his lawsuit against a financial advisor.

Next, Lee contends that Rheem's concern about his health was pretextual, yet he previously acknowledged that his health was a legitimate concern. For example, after his interview, Lee wrote a follow-up letter to Jones, the President of the Air Conditioning Division, in which Lee stated:

> It appears that Rheem management has two major concerns about my returning to work for Rheem. One is my health, and the other is the need for a suitable replacement for Tony should he depart the Company in the next few years. These are certainly legitimate concerns that need a rational response for me to be a viable candidate for the position.

Lee also asserts that Rheem's concern over his contact with Steele was pretextual because Lee simply wanted to determine if Steele could work with him in reducing the number of grievances at the plant if Lee was hired as the Labor Relations Administrator. While this may be true, it does not show that Rheem's concern was pretextual. Rheem reasonably viewed Lee's call to the President of Local 7893 as a questionable judgment given the changed atmosphere at the plant since Lee's retirement due to Rheem's strained relationship with Local 7893, the implementation of lean manufacturing, and new leadership of the Air Conditioning Division.

Finally, Lee contends that Rheem's desire to hire someone familiar with lean manufacturing was a pretext because that qualification was not listed in the newspaper advertisement. However, the advertisement noted that an applicant needed experience with grievance handling, negotiations and other labor relations matters. In performing these duties at Rheem, the Labor Relations Administrator would be dealing with Local 7893, which was resisting the implementation of lean manufacturing principles in the Fort Smith plant. While Lee had no experience with lean manufacturing, Raines currently was working for a company that utilized those principles. Furthermore, Raines had labor relations experience and was interested in a long-term career and promotions at Rheem. Lee himself characterized Raines as "educationally over qualified for the position." Although Lee had significant labor relations experience at Rheem, the search committee took many factors into consideration, and we will not question the wisdom of Rheem's decision that Raines was more qualified for the position. *See Thomas v. Runyon*, 108 F.3d 957, 960 (8th Cir. 1997) (stating in a Title VII race discrimination case that "[o]ur determination is limited to whether the employer gave an honest nondiscriminatory explanation for its actions, rather than to weigh the wisdom of any particular employment decision").

We conclude that Lee has not established evidence sufficient to raise a triable issue as to whether Rheem's nondiscriminatory reasons for not hiring Lee for the Labor Relations Administrator position were pretext for age discrimination. Accordingly, the district court properly granted summary judgment.

## III. CONCLUSION

We affirm the grant of summary judgment to Rheem on Lee's age discrimination claim.

A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans